**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
JAMES BENNETT WALLER, JR.,     )
                               )
            Petitioner,        )
                               )
     v.                        )          1:14CV763
                               )
FRANK L. PERRY,                )
                               )
            Respondent.¹       )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus via 28 U.S.C. § 2254. (Docket Entry 1.)² For the reasons that follow, this Court should deny relief.

## I. BACKGROUND

A jury in the Superior Court of Durham County found Petitioner guilty of attempted sexual offense with a 13-year-old and indecent liberties with a child in case 11CRS56021, whereupon the trial court entered judgment sentencing him to consecutive prison terms of 180 to 225 months and 19 to 23 months. (Id., ¶¶ 1, 3, 5, 6; see also Docket Entry 5-2 at 28 (verdict form), 31-34 (judgments); Docket Entry 5-9 at 469-71 (portion of trial transcript documenting

---

¹ Petitioner originally failed to name a respondent, but, pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases, the Court designated the Secretary of the North Carolina Department of Public Safety, Mr. Perry, as Respondent. (See Docket Entry 2 at 1 n.1.)

² Along with the standard form for Section 2254 petitions, Petitioner submitted documents from his underlying state criminal case. (See Docket Entry 1 at 15-22; Docket Entry 1-1 at 2-51; Docket Entry 1-2 at 1-28.) Respondent also attached to his summary judgment brief documents from that case. (See Docket Entry 5-2 at 2-42; Docket Entry 5-3 at 2-30; Docket Entry 5-4 at 2-33; Docket Entry 5-5 at 3-35; Docket Entry 5-6 at 1-33; Docket Entry 5-7 at 3-13; Docket Entry 5-8 at 2-14; Docket Entry 5-9 at 2-486.) Pin cites to those materials, as well as the summary judgment briefs, refer to the page number that appears in the footer appended to each page upon filing with the Court's CM/ECF system.

verdict), 477-78 (portion of trial transcript documenting sentence).)[3] Petitioner pursued but failed to obtain relief on direct appeal. State v. Waller, No. COA12-1531, 749 S.E.2d 110 (table), 2013 WL 4007775 (N.C. Ct. App. Aug. 6, 2013) (unpublished).[4] The Superior Court thereafter denied his Motion for Appropriate Relief ("MAR") and the North Carolina Court of Appeals declined review. (Docket Entry 1, ¶¶ 10, 11; see also id. at 15 (order denying certiorari), 16 (order denying MAR); Docket Entries 5-5 & 5-6 (MAR).) Petitioner then instituted this action. (Docket Entry 1.) Respondent has moved for summary judgment (Docket Entry 4) and Petitioner has responded (Docket Entry 7).

The North Carolina Court of Appeals summarized some key evidence from Petitioner's state criminal case as follows:

> At trial, the minor complainant Marjorie[FN1] was first to testify during the state's case-in-chief. In May 2011, Marjorie was a thirteen-year-old eighth-grader living in Durham with her mother, Samantha.[FN2] Marjorie testified that Samantha operated a daycare center in their home. Tabitha Waller ("Ms. Waller"), one of Samantha's customers, often left her son at the daycare. At the time of trial, Ms. Waller was twenty-four years old. Ms. Waller and Marjorie became friends. Marjorie often called Ms. Waller her "play aunt" even though they were not related. Ms. Waller's father, [Petitioner], did yard work for Samantha and visited his grandson at the daycare.
>
> FN1. "Marjorie" is a pseudonym used to protect the minor's privacy.

---

[3] The jury actually found Petitioner guilty of two counts of indecent liberties with a child (see Docket Entry 1, ¶ 5; Docket Entry 5-2 at 28; Docket Entry 5-9 at 470), but the trial court entered judgment only on one such count (see Docket Entry 5-9 at 477-78).

[4] Petitioner did not attempt to advance his direct appeal to the North Carolina Supreme Court. (See Docket Entry 1, ¶ 9(g).)

FN2. "Samantha" is a pseudonym used to protect the family's privacy.

On 4 May 2011, [Petitioner] picked up Marjorie at her home after school to go ice skating. Since [Petitioner] came straight from work, he first took Marjorie to his home to change his clothes and pick up his skates. [Petitioner] and Marjorie then went to the rink. At the rink, [Petitioner's] son and his son's mother were already present. After about an hour and a half of skating, [Petitioner] and Marjorie left. They first returned to [Petitioner's] home so [he] could give a haircut to a client.[FN3]

FN3. [Petitioner] was also a barber.

According to Marjorie, once they arrived at [Petitioner's] home, [he] cut the client's hair on an indoor porch. Marjorie was in the same room watching television. Afterward, [Petitioner] cleaned up the porch and he and Marjorie went into the living room. While [Petitioner] and Marjorie were preparing to leave, [he] asked her for a hug. After Marjorie hugged [Petitioner], he asked for another one. Marjorie again hugged [Petitioner], but this time she testified he began kissing the left side of her neck. Marjorie pushed [Petitioner] away, but he replied that it was okay and continued kissing her. Marjorie began crying.

[Petitioner] then pulled Marjorie by the hand into a bedroom. She continued to try to pull away. In the bedroom, [Petitioner] pushed Marjorie down onto the bed, laid her on her back and climbed onto the bed next to her. [Petitioner] then unzipped his pants, removed his penis, and put it six to eight inches from Marjorie's face. Marjorie understood this as a gesture for her to perform oral sex. Marjorie continued crying, turned her head away, and told [Petitioner] she wanted to go home. He agreed and got off the bed. In the living room, [Petitioner] told Marjorie "make sure you don't tell your mom." [Petitioner] then took Marjorie home. They did not speak during the ten to fifteen minute drive to Marjorie's home.

From 4 May to 25 May, Marjorie did not tell anyone about the incident at [Petitioner's] home. Marjorie testified that she did not tell anyone because she thought it would ruin her relationship with Ms. Waller.

On 25 May 2011, Marjorie told her mother and Ms. Waller what happened. Marjorie testified that her mom and Ms.

-3-

Waller had noticed she had been acting out and kept asking her about her behavior. When she got tired of them asking questions she told them what [Petitioner] had done to her. Samantha then called the police. Marjorie was interviewed by a police officer and told him the story of the events on 4 May 2011.

Ms. Waller was the second witness to testify for the State. She testified that she met Samantha and Marjorie three years prior when she first began using Samantha's childcare services.

She also testified that on 25 May 2011 she was at Samantha's home picking up her son when Marjorie told her of the events from 4 May 2011. Samantha called the police after Marjorie told them.

Following this testimony, the jury was excused while the State conducted a voir dire [of] Ms. Waller. During the voir dire, Ms. Waller testified that she lived with [Petitioner] intermittently from when she was seven until she was twelve, and [Petitioner] repeatedly raped her vaginally at his home during that time span. Ms. Waller also described how when she was twelve, [Petitioner] once stood in front of her at his home, removed his penis from his pants, and asked her to perform oral sex. When she refused, he beat her with a belt but did not physically force her to perform oral sex.

During voir dire, [Petitioner] objected to Ms. Waller's testimony under Rule 404(b) because the testimony described acts that contain "more dissimilarities than similarities" and the remoteness in time "makes the probability of an ongoing plan more tenuous." The trial court ruled the testimony admissible under Rule 404(b) and Rule 403 "to prove the existence of a plan or intent to engage in sexual activity with young girls." [Petitioner] again objected at the end of voir dire. Ms. Waller then testified before the jury.

Waller, 2013 WL 4007755, at *1-2.[5]

---

[5] At the conclusion of Ms. Waller's testimony, the trial court instructed the jury as follows:

Ladies and gentlemen, evidence was just received before you tending to show that this witness, [Ms.] Waller, was the victim of sexual assaults on behalf of [Petitioner], her father. This evidence was received solely for the purpose of showing the existence of a plan or intent by [Petitioner] to engage in sexual activities with young girls. If you believe this evidence, you may consider it, but only
(continued...)

-4-

## II. PETITIONER'S CLAIMS

The Petition identifies these four grounds for relief:

1) "[the] [t]rial [c]ourt erred by admitting 'evidence' of prior bad acts which had no basis in fact or occurrence" (Docket Entry 1, ¶ 12(Ground One));

2) "[i]neffective [a]ssistance of [c]ounsel" (id., ¶ 12 (Ground Two); see also id., ¶ 12(Ground Two)(a) ("[Petitioner's] [d]efense [a]ttorney [was] ineffective for not deposing [or] interviewing [an] alibi witness . . . ."));

3) "Durham PD and Asst. Dist. Attorney conspired to deny [e]vidence on [Petitioner's] behalf by refusing to depose/interview [an] [a]libi [witness]" (id., ¶ 12(Ground Three)); and

4) "[h]earsay which is uncorroborated was leaned on as evidence of past crimes despite no evidence or even allegations made previously" (id., ¶ 12(Ground Four)).

---

⁵(...continued)

    for the purpose for which it was received.  You may not consider it
    for any other purpose.

(Docket Entry 5-9 at 260.)  Immediately prior to deliberations, the trial court again instructed the jury:

    [E]vidence has been received tending to show that [Petitioner]
    engaged in sexual activities with his daughter.  This evidence was
    received solely for the purpose of showing that there existed --
    that there existed in the mind of [Petitioner] a plan, scheme,
    system, or design involving the crime charged in this case.  If you
    believe this evidence, you may consider it, but only for the limited
    purpose for which it was received.  You may not consider it for any
    other purpose.

(Id. at 455-56.)

## III. HABEAS STANDARDS

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to [this] [C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

When a petitioner has exhausted state remedies, this Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[] facts that are materially indistinguishable from a

relevant [United States] Supreme Court precedent and arrive[] at a result opposite" to the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409–11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous").

## IV. DISCUSSION

### A. Grounds One and Four: Challenges to Prior Act Evidence

Grounds One and Four of the Petition seek federal habeas relief based on the trial court's admission of Ms. Waller's testimony about her prior sexual abuse by Petitioner. (See Docket Entry 1, ¶ 12(Ground One) & (Ground Four).) More particularly, in connection with Ground One (which asserts that "[the] [t]rial [c]ourt erred by admitting 'evidence' of prior bad acts which had no basis in fact or occurrence" (Docket Entry 1, ¶ 12(Ground One))), Petitioner offered the following "[s]upporting facts":

> No alleged bad acts had ever been stated prior to [the] current case by "witness" [Ms.] Waller. No testing, [n]o examinations, [and] [n]o third parties had ever found [Ms.] Waller to have been or suspected to have been a victim of alleged prior acts [b]ecause none occurred. [Ms.] Waller [c]oerced an impressionable teen into lieing [sic] for her own ends [and] then substantiated the lie she created with false support lies all to remove an obstacle to her own legal woes. Nothing exists(ed) to support [Ms. Waller's] allegations.

-7-

(Id., ¶ 12(Ground One)(a).) Similarly, as the basis for Ground Four (which contends that "[h]earsay which is uncorroborated was leaned on as evidence of past crimes despite no evidence or even allegations made previously" (id., ¶ 12(Ground Four))), Petitioner cited these "[s]upporting facts":

> [The] State attempted to utilize [h]earsay testimony of a previous similar act when it had no knowledge or proof of said [a]ct. No crime was ever previously alleged. No tests or reports support [the] allegations and [n]o new evidence to substantiate such was presented. This in turned [sic] [was] used as the basis to show "new" crimes, a violation of [Petitioner's] Constitutional rights and [the] States [sic] own [s]tatutes.

(Id., ¶ 12(Ground Four)(a).)

In essence, Grounds One and Four complain that Ms. Waller falsely testified at trial that Petitioner sexually abused her and that the absence of evidence of prior reporting by Ms. Waller or corroboration of her testimony rendered its admission erroneous (as well as, at least as to Ground Four, violative of Petitioner's (unspecified) constitutional rights).[6] "[T]he admissibility of evidence is generally a matter of state law which does not concern a federal habeas court unless it impugns the fundamental fairness of the trial." Stockton v. Virginia, 852 F.2d 740, 748 (4th Cir. 1988) (emphasis added); see also Burket v. Angelone, 208 F.3d 172,

---

[6] Ground Four mis-characterizes Ms. Waller's trial testimony that Petitioner sexually abused her as hearsay. See United States v. Halter, 259 F. App'x 738, 741 (6th Cir. 2008) ("[The defendant] claims in very general terms that testimony by government witnesses . . . constituted hearsay . . . . This argument is meritless. Hearsay is an out-of-court statement offered for the truth of the matter asserted. The government witnesses testified in court based on their personal knowledge . . . ." (internal citation omitted)). Petitioner's MAR indicates that this error stems from his mistaken equating of testimony lacking corroboration with hearsay. (See Docket Entry 5-5 at 20 (arguing that the State "us[ed] [a] flawed Rule 404(b) hearing to introduce uncorroborated, and therefore hearsay testimony of [Ms.] Waller").)

-8-

186 (4th Cir. 2000) ("In federal habeas actions, we do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding."). Moreover, the United States Supreme Court "ha[s] defined the category of infractions that violate 'fundamental fairness' very narrowly." Dowling v. United States, 493 U.S. 342, 352 (1990); see also Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974) ("[N]ot every trial error or infirmity which might call for application of supervisory powers [on direct appeal] correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." (internal quotation marks omitted)).

According to Respondent, consideration by this Court of even the very limited question of whether the admission of Ms. Waller's testimony deprived Petitioner of fundamental fairness "is procedurally barred for two separate reasons. First, a review of Petitioner's appellate brief shows he did not raise this contention in federal constitutional terms in the [North Carolina Court of Appeals] . . . . Second, Petitioner did not raise [this claim] in a timely filed notice of appeal or petition for discretionary review to the North Carolina Supreme Court . . . ." (Docket Entry 5 at 4 (internal parentheticals omitted); see also id. at 18 ("[Ground Four] is merely a re-phrasing or slight permutation of Ground [One]. Therefore, for the same reasons and authorities set forth above in response to Ground [One], . . . Ground [Four] is procedurally barred . . . .").) As to the latter point, Petitioner

has conceded that he did not pursue a direct appeal before the North Carolina Supreme Court. (Docket Entry 1, ¶ 9(g).) The record also reflects that Petitioner did not present a federal constitutional claim in his direct appeal to the North Carolina Court of Appeals (see Docket Entry 5-3 at 6, 17-27); to the contrary, "[o]n appeal, [Petitioner] argue[d] the trial court erred by admitting Ms. Waller's testimony <u>under North Carolina Rule of Evidence 404(b)</u>." <u>Waller</u>, 2013 WL 4007755, at *3 (emphasis added).

Under these circumstances, a procedural bar generally would have precluded Petitioner from raising a federal constitutional claim related to Ms. Waller's testimony in collateral proceedings both in North Carolina state courts and in this Court. <u>See generally</u> N.C. Gen. Stat. § 15A-1419(a)(3) & (b); <u>Jones v. Sussex I State Prison</u>, 591 F.3d 707, 712-13 (4th Cir. 2010). However, Petitioner's MAR (at least arguably) fairly presented the federal constitutional claim now asserted in Grounds One and Four. (<u>See</u> Docket Entry 5-5 at 7-8 ("I am legally entitled to [r]elief from my conviction [because it was] . . . based upon and supported not by facts, evidence, or informations garnered by the alleged charge but by illegal hearsay evidence offered by a third unaffected party and such uncorroborated evidence's being erroneously allowed into evidence . . . . [My] conviction and/or sentencing were obtained in violation of due process of law . . . in violation of the Constitution[] of the United States of America . . . ."), 20-21 ("[The] State attempted to circumvent the statutory/Federal [r]equirements . . . by using [a] flawed Rule 404(b) hearing to

-10-

introduce uncorroborated, and therefore hearsay testimony of [Ms.] Waller in which she assigns to [Petitioner] prior bad acts of a similar nature to crimes [Petitioner] was facing in the instant case."), 22 (arguing that the State cannot present prior bad act evidence "to the detriment of Due Process").) And, moreover, the Superior Court summarily denied that claim (along with the rest of Petitioner's MAR) <u>not</u> based on any procedural bar, but because said claim "sets forth no probable grounds for the relief requested, either in law or in fact." (Docket Entry 1 at 16.)

Respondent insists that the Superior Court's "summary MAR order should be construed as . . . [a] denial of Petitioner's Ground[s] [One and Four] on grounds of procedural bar, and on the merits." (Docket Entry 5 at 6.) The Court should decline to adopt that position and instead should treat the Superior Court's MAR order only as an adjudication on the merits. <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989) (holding that "procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case '"clearly and expressly"' states that its judgment rests on a state procedural bar" (quoting <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 327 (1985), in turn quoting <u>Michigan v. Long</u>, 463 U.S. 1032, 1041 (1983))); <u>see also</u> <u>Johnson v. Williams</u>, ___ U.S. ___, ___, 133 S. Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits

-11-

. . . [and that] presumption is a strong one that may be rebutted only in unusual circumstances . . . .").

Despite avoiding the procedural bar raised by Respondent, Petitioner cannot prevail on Grounds One and Four. "[B]ecause this matter comes before [this Court] pursuant to [a] § 2254 petition for habeas corpus relief, . . . [the Court] may award [Petitioner] relief only if [the Superior Court's denial of the MAR claim parallel to the one raised in Grounds One and Four] . . . can be found deficient under the highly deferential standards . . . contained in § 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses, as well as in § 2254(d)(2)'s 'unreasonable determination of the facts' provision." Baum v. Rushton, 572 F.3d 198, 209 (4th Cir. 2009); see also Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398 (2011) (observing that Section 2254(d) imposes "a difficult to meet and highly deferential standard . . ., which demands that state-court decisions be given the benefit of the doubt . . . [and that a] petitioner carries the burden of proof" (internal citations and quotation marks omitted)); Baum, 572 F.3d at 209 ("We emphasize 'that it is Supreme Court precedent, and not Fourth Circuit precedent, to which we look in applying [Section 2254(d)(1)'s] standard of review.'" (quoting Bustos v. White, 521 F.3d 321, 325 (4th Cir. 2008))).

Petitioner has not made the showing required by Section 2254(d). First, he has not identified any unreasonable fact-finding (made or relied upon) by the Superior Court in denying his claim that the admission of Ms. Waller's testimony resulted in

-12-

fundamental unfairness proscribed by the Due Process Clause. (See Docket Entry 1, ¶ 12(Ground One)(a) & (Ground Four)(a); Docket Entry 7 at 2-7.) Second, Petitioner has not established that the Superior Court's rejection of the federal constitutional claim now presented in Grounds One and Four contradicted or unreasonably applied any United States Supreme Court decision. (See id.)

Nor could Petitioner carry that burden, given the United States Supreme Court's rulings and/or reservation of rulings in this area. See, e.g., Perry v. New Hampshire, ___ U.S. ___, ___, ___, 132 S. Ct. 716, 723, 728 (2012) ("The Constitution, our decisions indicate, protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credibility. Constitutional safeguards available to defendants to counter the State's evidence include the Sixth Amendment rights to counsel, compulsory process, and confrontation plus cross-examination of witnesses. . . . [T]he potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair." (internal citations omitted)); Dowling, 493 U.S. at 352-53 ("[The] petitioner also contends that the introduction of this evidence [of prior crimes for which he previously was acquitted] was unconstitutional because it failed the due process test of 'fundamental fairness.' We recognize that the introduction of evidence in circumstances like those involved here has the

-13-

potential to prejudice the jury . . . . The question, however, is whether it is acceptable to deal with the potential for abuse through nonconstitutional sources like the Federal Rules of Evidence, or whether the introduction of this type of evidence is so extremely unfair that its admission violates 'fundamental conceptions of justice.' Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate 'fundamental fairness' very narrowly. As we [previously have] observed . . . [judges] are to determine only whether the action complained of violates those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency. Especially in light of the limiting instructions provided by the trial judge [emphasizing the narrow purpose for which the jury could consider the prior crimes evidence], we cannot hold that the introduction of the [prior crimes] testimony merits this kind of condemnation." (internal block quotation formatting, citations, ellipses, footnote, and some quotation marks omitted)); Spencer v. Texas, 385 U.S. 554, 560-64 (1967) ("The rules concerning evidence of prior offenses are complex, and vary from jurisdiction to jurisdiction, but they can be summarized broadly. Because such evidence is generally recognized to have potentiality for prejudice, it is usually excluded except when it is particularly probative in showing such things as intent, an element of the crime, identity, malice,

-14-

motive, a system of criminal activity, or when the defendant has raised the issue of his character, or when the defendant has testified and the State seeks to impeach his credibility. . . . The defendants' interests are protected by limiting instructions and by the discretion of the trial judge to limit or forbid the admission of particularly prejudicial evidence even though admissible under an accepted rule of evidence. This general survey sufficiently indicates that the law of evidence, which has been chiefly developed by the States, has evolved a set of rules designed to reconcile the possibility that this type of information will have some prejudicial effect with the admitted usefulness it has as a factor to be considered by the jury for any one of a large number of valid purposes. . . . To say the United States Constitution is infringed simply because this type of evidence may be prejudicial and limiting instructions inadequate to vitiate prejudicial effects, would make inroads into this entire complex code of state criminal evidentiary law, and would threaten other large areas of trial jurisprudence. . . . Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. But it has never been thought that such cases establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority." (internal citations omitted)); <u>Bugh v. Mitchell</u>, 329 F.3d 496, 512-13 (6th Cir. 2003) ("There is no clearly established Supreme Court

precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. In <u>Estelle v. McGuire</u>, the Supreme Court declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief. 502 U.S. 62, 75 (1991). The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. <u>Id.</u> at 75 n.5. . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, <u>see</u> <u>Old Chief v. United States</u>, 519 U.S. 172 (1997); <u>Huddleston v. United States</u>, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. Accordingly, the district court correctly found that there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to,' under [Section 2254(d)]." (internal parallel citations omitted)).

In sum, the Court should enter judgment against Petitioner on Grounds One and Four, pursuant to Section 2254(d).

### B. Grounds Two and Three: Alibi Witness-Related Challenges

Via Grounds Two and Three of the Petition, Petitioner collaterally attacks his convictions due to alleged ineffective assistance of counsel and prosecutorial misconduct related to a purported alibi witness. (<u>See</u> Docket Entry 1, ¶ 12(Ground Two) & (Ground Three).) Specifically, Ground Two (which bears the label

-16-

"Ineffective Assistance of Counsel" (Docket Entry 1, ¶ 12(Ground Two))), relies on these "[s]upporting facts":

> [Petitioner's] [d]efense [a]ttorney [was] ineffective for not deposing [or] interviewing [an] alibit witness [who was] an officer of the [c]ourt Keenan Headen (attorney Durham County) who repeatedly attempted to contact [d]efense and [p]rosecution on [Petitioner's] behalf, as well as other violations.

(Id., ¶ 12(Ground Two)(a).)[7] In turn, Ground Three (which Petitioner entitled "Durham PD and Asst. Dist. Attorney conspired to deny [e]vidence on [Petitioner's] behalf by refusing to depose/interview [an] [a]libi [witness]" (id., ¶ 12(Ground Three))) identifies the following "[s]upporting facts":

> Durham PD Investigator Glover attempted to cover up the fact that [a]libi [w]itness K. Headen was a [k]nown [a]ttorney and officer of the [c]ourt in order to deny [Petitioner an] [a]libi which [r]efuted the allegations which he himself neglected to investigate even going so far as to send an interagency e-mail to [an] Asst. DA stating that K. Headen couldn't be located (a lie) and was maybe an [a]ttorney. This despite (1) working in the same Judicial System as Attorney K. Headen (2) being contacted numerous times by K. Headen [and] (3) [h]aving K. Headen [sic] direct contact [n]umber and Attorney ID.

(Id., ¶ 12(Ground Three)(a) (emphasis in original).)

Petitioner's MAR raised these same claims. (See Docket Entry 5-5 at 7 ("[Petitioner's] trial attorney was ineffective for not interviewing [an] alibi witness . . . ."), 8 ("[P]olice and [a]

---

[7] To the extent Ground Two alleges ineffective assistance based on unspecified "other violations" (Docket Entry 1, ¶ 12(Ground Two)(a)), the "claim is vague, conclusory, speculative, and unsupported and fails for all these reasons," Cabrera v. United States, Nos. 1:09CR323-1, 1:12CV695, 2014 WL 6386902, at *9 (M.D.N.C. Nov. 14, 2014) (unpublished) (Osteen, Jr., C.J.); see also Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing on an ineffective assistance claim - or, for that matter, on any claim - a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), abrogation on other grounds recognized, Yeatts v. Angelone, 166 F.3d 255, 266 n.4 (4th Cir. 1999).

-17-

prosecutor intentionally mislead [sic] both [the] [g]rand [j]ury and [c]ourt as to the existence of [an] alibi witness [who was] also an officer of the [c]ourt (Attorney Keenan Headen) by attempting to present to court no such attorney existed (when he was easily found via NC Attorney ID) and omitting such to [g]rand [j]ury to obtain [an] [i]ndictment and [t]rial [j]ury to withhold exculpatory evidence."), 10-11 ("My conviction was obtained in violation of Due Process of Law as protected/laid out in (and by) the United States Constitution . . . . [T]he Det. (Glover) attempted to 'explain away' not contacting Attorney Keenan Headen stating he could not reach him, and he (Headen) was 'supposedly' a lawyer in Durham . . . [w]hen in [r]eality it would have been simple to locate a NC [a]ttorney [because] each has an ID# assigned by the bar and are online and in NC B[ar] [d]atabase. This was an undisguised (or at best thinly/very disguised) attempt to discredit and ignore [Petitioner's] alibi witness who was/is an officer of the [c]ourt so easily locateable [sic]. A blatant violation of [Petitioner's] Due Process [r]ights."), 31 ("By refusing to contact alibi witness and . . . refusing to take statement(s) of [a]libi by the [a]fore-mentioned Keenan Headen . . . Det. Glover and State (by proxy) conspired to deny [Petitioner's] [r]ight(s) to present evidence favorable to himself."), 35 ("Defense counsel was ineffective in that . . . [he did not] directly contact [a]ny [a]libi witness despite multiple [a]ttempts by Keenan Headen Attorney-at-Law to come forth and supply [an] alibi [a]nd contacting both [the] State (Inv. Glover) and defense.").

-18-

Further (as discussed in the preceding subsection), the Superior Court summarily denied Petitioner's entire MAR (and thus the foregoing claims) on the merits. (See Docket Entry 1 at 16.) As a result, the Court "may award [Petitioner] relief only if [the Superior Court's denial of the MAR claim parallel to the ones raised in Grounds Two and Three] . . . can be found deficient under the highly deferential standards . . . contained in § 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses, as well as in § 2254(d)(2)'s 'unreasonable determination of the facts' provision." Baum, 572 F.3d at 209; see also Cullen, ___ U.S. at ___, 131 S. Ct. at 1398 (observing that Section 2254(d) imposes "a difficult to meet and highly deferential standard . . ., which demands that state-court decisions be given the benefit of the doubt . . . [and that a] petitioner carries the burden of proof" (internal citations and quotation marks omitted)).

Petitioner has failed to satisfy Section 2254(d). As an initial matter, he has not shown that the Superior Court engaged in or adopted any unreasonable fact-finding on point. (See Docket Entry 1, ¶ 12(Ground Two)(a) & (Ground Three)(a); Docket Entry 7 at 2-7.) Nor has Petitioner established that the Superior Court contradicted or unreasonably applied any United States Supreme Court decision by denying the MAR claims that mirrored Grounds Two and Three. (See id.) To the contrary, as Respondent has observed, "[t]he Headen affidavit Petitioner attached to his MAR basically states that Petitioner was [Headen's] barber and [Headen] went to Petitioner's house for hair cuts and never saw any young females.

-19-

Case 1:14-cv-00763-WO-LPA   Document 8   Filed 08/14/15   Page 19 of 20

He could not say, however, whether he had a hair cut on the date of the crimes." (Docket Entry 5 at 16; see also Docket Entry 5-6 at 19-20 (affidavit from Keenan Headen attached to MAR).) In other words, the evidence presented to the Superior Court regarding Headen did not tend to show that an interview with Headen (by Petitioner's counsel or Investigator Glover) would have revealed an alibi. Accordingly, Petitioner cannot carry his burden of demonstrating that, by summarily denying the claims now presented in Grounds Two and Three, the Superior Court contradicted or unreasonably applied United States Supreme Court authority pertaining to ineffective assistance of counsel and prosecutorial misconduct in the form of exculpatory-evidence-suppression, because the United States Supreme Court has made clear that both of those types of claims require proof of a reasonable probability of a different outcome. See Kyles v. Whitley, 514 U.S. 419, 434-41 (1995); Strickland v. Washington, 466 U.S. 668, 693-95 (1984).

Simply put, Grounds Two and Three fall short under Section 2254(d).

### V. CONCLUSION

Petitioner's habeas claims all fail as a matter of law.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be granted and that judgment be entered dismissing this action without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 14, 2015

-20-

Case 1:14-cv-00763-WO-LPA   Document 8   Filed 08/14/15   Page 20 of 20